*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *JOAN C. LIPIN,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 07-92-P-S* |
| | ) | |
| *EVELYN F. ELLIS, in her capacity* | ) | |
| *as Special Administrator of the* | ) | |
| *Estate of Theodore Lipin, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |
| | ) | |

*MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO STRIKE*
*AND RECOMMENDED DECISION ON DEFENDANTS' MOTIONS TO DISMISS*

In 2006, plaintiff Joan C. Lipin sought to remove to this court three state-court cases related to the contested probate of the estate of her late father, Theodore Lipin, M.D. ("Dr. Lipin").  *See* Notice of Removal (Docket No.1), *Ellis v. Lipin*, Civil No. 06-133-P-S (D. Me.) ("*Lipin I*").  The court rebuffed that effort, granting motions filed by Lipin's sister-in-law Evelyn F. Ellis, in her capacity as a special administrator of the Estate of Theodore Lipin ("Estate") and in her individual capacity, and Lipin's brother Robert Lipin to remand all three cases to state court.  *See* Docket Nos. 8, 10 & 29, *Lipin I*.  In so doing, the court characterized the removals as "frivolous at best."  *See* Docket No. 29, *Lipin I*.

Lipin now files the instant suit alleging a panoply of federal and state-law claims arising from the conduct of the ongoing probate of the Estate in Maine and in Sweden, where Dr. Lipin died on October 6, 2005.  *See generally* Amended Complaint (Docket No. 9).  She names four defendants:

Ellis, in her capacity as special administrator of the Estate;[1] David P. Silk, Esq., who has represented Ellis in proceedings pending in various courts in Cumberland County, Maine; David S. Sherman, Jr., Esq., who has represented Lipin's sister Susan Markatos in proceedings in various courts in Cumberland County, Maine; and the Hon. Joseph R. Mazziotti, probate judge of the Maine Probate Court sitting in Cumberland County, whom she sues "in his individual capacity as a lawyer who practices law in the State of Maine[.]" *Id*. ¶¶ 3-8. All four defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or (12)(b)(6) to dismiss all claims against them with prejudice. *See* Motion To Dismiss of Judge Joseph R. Mazziotti, etc. ("Mazziotti Motion To Dismiss") (Docket No. 10) at 1; Motion To Dismiss Plaintiff's Amended Complaint of Defendants Evelyn F. Ellis, in her Capacity as Special Administrator of the Estate of Theodore Lipin, David P. Silk and David S. Sherman, Jr., etc. ("Sherman Motion To Dismiss") (Docket No. 12) at 1-3; Ellis/Silk Motion To Dismiss at 1-2.[2] In connection therewith, three defendants, Mazziotti, Silk and Ellis, request that Lipin be enjoined from further filings in this court without prior approval. *See* Reply Memorandum of Defendant Joseph R. Mazziotti ("Mazziotti Dismiss Reply") (Docket No. 22) at 3; Reply Memorandum of David P. Silk in Support of Motion To Dismiss ("Silk Dismiss Reply") (Docket No. 23) at 3; Reply Memorandum of Evelyn F. Ellis, in her Capacity as Personal Representative, in Support of Motion To Dismiss ("Ellis Dismiss Reply") (Docket No. 27). Mazziotti, who continues to sit in pending matters pertinent to the Estate in Probate Court, specifically requests that no costs or sanctions be awarded to him even if they are awarded to other parties. *See* Mazziotti Motion To

---

[1] By order of the Maine Probate Court dated May 24, 2007, Ellis was named personal representative of the Estate, and her status as special administrator of the Estate was terminated. *See* Defendants Evelyn F. Ellis, in Her Capacity as Personal Representative (and Former Special Administrator) of the Estate of Theodore Lipin, and David P. Silk's Motion To Join David S. Sherman, Jr.'s Motion To Dismiss Plaintiff's Amended Complaint, etc. ("Ellis/Silk Motion To Dismiss") (Docket No. 13) at 1 n.1 & Exh. 1 thereto.

[2] Although titled a motion to dismiss on behalf of Ellis, Silk and Sherman, the Sherman Motion To Dismiss is filed only on behalf of Sherman. *See* Sherman Motion To Dismiss. However, Ellis and Silk filed a separate motion to join in Sherman's motion. *See* Ellis/Silk Motion To Dismiss. Thus, as a practical matter, the Sherman Motion To Dismiss does present the arguments of all three defendants.

Dismiss at 12; Mazziotti Dismiss Reply at 3. Finally, as she did in *Lipin I*, *see* Docket No. 19, *Lipin I*, Lipin not only opposes but also moves to strike certain of her opponents' motions, in this case the Sherman, Ellis and Silk motions to dismiss. *See* Motion by Plaintiff To Strike and Deny Motions To Dismiss by Defendants David S. Sherman, Evelyn F. Ellis, and David P. Silk, etc. ("Sherman/Ellis/Silk Dismiss Opposition") (Docket No. 17) & ("Motion To Strike") (Docket No. 18) at 1.[3]

For the reasons that follow, I deny the Motion To Strike and recommend that the court grant, on the basis of failure to state a claim upon which relief can be granted, the motions of all four defendants to dismiss the instant amended complaint with prejudice. I further recommend that the court deny, at this time, the request of Mazziotti, Silk and Ellis for a broad injunction against future filings by Lipin but that, at the least, it issue a cautionary order warning her that groundless, vexatious filings will not be tolerated and that filing restrictions may be imposed. Finally, I recommend that the court honor Mazziotti's request that no costs be awarded to him. No action is necessary on Mazziotti's request not to be awarded sanctions (apart from a filing injunction), no defendant having to date sought them.

## I. Motion To Strike

Insofar as can be gleaned from Lipin's rambling memorandum of law, she invokes Federal Rule of Civil Procedure 12(f) as a basis to strike the Sherman, Ellis and Silk motions to dismiss. *See* Motion To Strike at 1-2. Rule 12(f) provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

---

[3] The Motion To Strike, embedded within the Sherman/Ellis/Silk Dismiss Opposition filed at Docket No. 17, has been given a separate
*(continued on next page)*

Lipin argues that (i) the "defendants' motions to dismiss fail in fact and law," (ii) "the requested relief may not be granted," (iii) "the pleadings represent an insufficient defense," (iv) "the memorandum of law by defendant Sherman relies upon Exhibits attached thereto that contain documents, fragments and/or alterations of and documents . . . from other courts and other judges, that are . . . not final, have not been authenticated, and are immaterial, impertinent, or scandalous, and are not relevant to the subject matter jurisdiction of this Court over plaintiff's claims," and (v) the defendants injected those outside materials into this proceeding "to misrepresent and deceive the Court" and in furtherance of a scheme "of criminal acts and fraud" intended to injure the plaintiff's financial and property interests and cause her irreparable injury and substantial prejudice.  Motion To Strike at 1-2.

She also appears to suggest that the motions should be stricken on the bases that (i) attorneys for defendants Sherman, Silk and Ellis (Melissa Hewey, Christian Chandler and David Hunt, respectively) and those attorneys' law firms are disqualified from representing those defendants on the basis of alleged conflicts of interest, and (ii)  new evidence buttresses claims in her Amended Complaint to the effect that defendant attorneys Silk and Sherman and non-party attorney Hunt, among others, are engaged in a conspiracy to financially ruin and silence her and extract astronomical legal fees from the Estate and/or herself directly.  *See id*. at 2-10.[4]

For the reasons that follow, I deny this groundless and vexatious motion:

1.      Rule 12(f) is inapposite.  It pertains to pleadings, not to motions and memoranda of law.  *See, e.g., Boese v. Slaughter*, No. CV 05-28 GFSEHRKS, 2007 WL 1071924, at *3 (D. Mont. Mar. 5, 2007) ("'By its terms, Rule 12(f) applies to pleadings, not motions.'"); *Rouse v. Caruso*, No.

_____

docket number, Docket No. 18.
[4] Lipin targets Hewey (mistakenly called Harvey), Chandler and Hunt for disqualification, *see* Motion To Strike at 1; however, she also subsequently suggests that Silk and Sherman are, or should be, disqualified from continuing to represent their clients.  *See id*. at 8  For *(continued on next page)*

4

06-CV-10961-DT, 2007 WL 209920, at *2 (E.D. Mich. Jan. 24, 2007) ("[N]either defendants' motions nor responses to motions constitute 'pleadings' subject to Rule 12(f). The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings.") (citations and internal quotation marks omitted).

2.       In any event, as one court has observed, "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *West Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation and internal quotation marks omitted). That is the case here. Lipin's contentions that the Sherman motion constitutes an "insufficient defense" and contains impertinent, immaterial, scandalous or irrelevant matter are specious. To the contrary, for reasons discussed below, the Sherman motion has merit, and there is nothing improper in its attachment of copies of court orders and judgments, *see* Exhs. 1-7 to Sherman Motion To Dismiss – matters of public record of which a court may take cognizance when deciding a Rule 12(b)(6) motion such as Sherman's. *See, e.g.*, *Boateng v. InterAmerican Univ., Inc*., 210 F.3d 56, 60 (1st Cir. 2000) ("[A] court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment."). While Lipin complains that the courtesy copies provided as exhibits by Sherman are unauthenticated and fragmented or even altered, they appear on their faces to be complete and authentic, and she offers no competing copies or otherwise articulates how any of them is incomplete or altered. *See* Motion To Strike at 1-2, 7.[5] Lipin in effect misuses her Rule 12(f) "insufficient defense" argument as a vehicle to reargue the underlying merits of the Sherman Motion To Dismiss. *See generally* Plaintiff's Reply Memorandum in Support of Motion To Strike Defendant

_____

purposes of resolution of the Motion To Strike it is unnecessary to determine precisely whose disqualification is sought.
[5] Exhibit No. 7, containing a March 3, 2006 order of Judge Mazziotti, appears to be part of a larger document; however, the complete text of the order is provided. *See* Exh. 7 to Sherman Motion To Dismiss.

Sherman's Motion To Dismiss (Docket No. 26) ("Sherman Strike Reply"); Reply to Opposition of Attorney Hunt Dated July 13, 2007 to Plaintiff's Motion To Strike (Docket No. 30) ("Ellis Strike Reply"); Plaintiff's Reply to Defendant Silk's Opposition to Plaintiff's Motion To Strike and Disqualify, and Cross-Motion for Discovery and Implementation of Pre-Trial Procedures (Docket No. 31) ("Silk Strike Reply").

3.      Assuming *arguendo* that Lipin's disqualification-of-counsel arguments have any merit, she does not cite any authority for the proposition that such disqualification would provide a basis for striking previously filed motions or memoranda of law in these (or any) circumstances. *See id.* at 1-2, 7-10. [6]

4.      Beyond this, Lipin clutters her Motion To Strike and her lengthy reply memoranda in support thereof with allusions to "new evidence" that she says bears out a conspiracy theory alleged in her Amended Complaint. *See generally* Motion To Strike; Sherman Strike Reply; Ellis Strike Reply; Silk Strike Reply. That purported "evidence" has no bearing whatsoever on the merits of either the underlying motion to dismiss or the instant motion to strike. Incredibly, she goes so far as to suggest that the "new evidence" of conspiracy includes the Sherman motion to dismiss. *See* Motion To Dismiss at 3.

---

[6] Lipin evidently does not intend this argument to constitute a motion to disqualify Hewey, Chandler, Hunt and their law firms; she subsequently filed a standalone motion requesting, *inter alia*, disqualification of Hunt. *See* Plaintiff's Motion to Defendants' Counsel To Correct Caption on Their Pleadings; and Motion To Disqualify David E. Hunt, Esq.; and Motion for Entry of Default Judgment Against Defendant Ellis (Docket No. 25). In any event, assuming *arguendo* that she intended by way of her Motion To Strike to move to disqualify those three attorneys and their law firms from representing defendants in this case, the dismissal of the instant Amended Complaint with prejudice, as I have recommended, would moot that request. *See, e.g., Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805-06 (8th Cir. 2006) ("Misischia also argues that the district court erred in denying his motion to disqualify St. John's attorneys. As the entire lawsuit was properly dismissed with prejudice, this issue is moot."); *Harker v. University Professionals of Ill.*, No. 98-1318, 1999 WL 38102, at *4 (7th Cir. Jan. 21, 1999) ("Because the court properly granted the motion to dismiss, the motion to disqualify counsel was moot.").

## II.  Motion To Dismiss

### A.  Applicable Legal Standards

As the Supreme Court recently has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[7]

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id.* "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

### B.  Factual Context

For purposes of the motions to dismiss, I accept the following well-pleaded allegations of the Amended Complaint, which I have endeavored to place in chronological order, as true.[8]  I also refer to

---

[7] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46).  The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

documents attached to the Amended Complaint or proffered by the defendants to the extent such documents are cognizable in this Rule 12(b)(6) context and their content is relevant to disposition of this recommended decision.

Lipin, a New York resident, is the daughter of Dr. Lipin, who died on October 6, 2005 in Stockholm, Sweden.  Amended Complaint ¶ 2.  Ellis, a New Hampshire resident, was appointed special administrator of the Estate by Mazziotti in March 2006.  *Id*. ¶¶ 3, 48.  In his order dated March 3, 2006, Mazziotti appointed Ellis special administrator "to collect and manage the assets of the estate; and to prepare all estate tax returns which may be required."  Exh. 7 to Sherman Motion To Dismiss.  Silk, a Maine citizen, is a lawyer practicing with Curtis Thaxter Stevens Broder & Micoleau in Portland, Maine and has represented Ellis in proceedings pending in various courts in Cumberland County, Maine.  Amended Complaint ¶ 4.  Silk also has represented Robert Lipin, who is Lipin's brother and Ellis's husband.  *Id*. ¶ 5.  Mazziotti, a Maine citizen, is an elected probate judge in Cumberland County, Maine and receives separate income in lucrative amounts from a private probate-law and real-estate practice located in Portland, Maine as well as his salary as a probate judge.  *Id*. ¶ 6.  Sherman, a Maine citizen, is a lawyer practicing with Drummond Woodsum & MacMahon in

---

[8] Although courts "construe all well-pleaded allegations liberally at this stage in the proceedings, we do not credit conclusory assertions, subjective characterizations or outright vituperation." *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp*., 246 F.3d 1, 5 (1st Cir. 2001) (citations and internal quotation marks omitted).  In like vein, a court "need not credit [a] complaint's bald assertions or legal conclusions." *Abbott v. United States*, 144 F.3d 1, 2 (1st Cir. 1998) (citation and internal quotation marks omitted).  As Sherman observes, *see* Sherman Motion To Dismiss at 4, relatively little of the 28-page Amended Complaint passes the well-pleaded-allegations screen.  The Amended Complaint is replete with conclusory assertions, legal conclusions, subjective characterizations and outright vituperation.  *See, e.g*., Amended Complaint ¶ 26 ("Defendant Ellis, in agreement with defendants Silk and Sherman, entered into an agreement with Swedish Attorney Ulf Bergquist on November 18, 2006, for the purpose of engaging upon a criminal restraint of trade, common plan or scheme, to commit larceny and deprive the Plaintiff of property and financial interests that belong to the Plaintiff, and to enrich themselves with 'astronomical' legal fees as a reward for engaging in such unlawful conduct contrary to the public interest, to the civil rights and constitutional rights of the Plaintiff."); *id*. ¶ 42 ("In furtherance of his own financial and political interests, defendant Mazziotti has aided and abetted the defendants, and each of them, and attorney David E. Hunt, in their conspiracy to commit criminal actions in order to enrich themselves.").  Such allegations are omitted from my recitation of facts.

Portland, Maine and has represented Susan Markatos, Lipin's sister, in proceedings in various courts in Cumberland County, Maine. *Id*. ¶ 8.

Lipin claims a freehold estate in real property located at 301 Hio Ridge Shores South, Bridgton, Maine ("Moose Pond Property") based upon the gift of such property to her by her father many years before his death, her continuing and exclusive attention to the preservation of, and improvements upon, the property and substantial investments of time and expense in the property and, in the alternative, adverse possession of the property under a claim of right. *Id*. ¶ 10. Lipin has been in full, free, exclusive and uninterrupted possession of the Moose Pond Property for more than twenty-three years and has never permitted anyone else to use the property or to trespass upon it, and she used the land as its owner, clearing and cutting trees for firewood, storing equipment, laboring, gardening, planting fruit trees, installing fencing, engaging in a number of recreational activities and preserving and rehabilitating the property on a continuing basis. *Id*. ¶ 11. She paid the real-estate taxes for the Moose Pond Property for 2005-06 and 2006-07, there are no outstanding taxes, and she continues to be the insured property homeowner with an insurance policy that covers the "premises and contents at 301 HIO RIDGE SHORES SOUTH," as shown in the notice of the renewed Fireman's Fund Insurance Company's Personal Homeowner Policy No. NZB 313 53 62, signed and issued to her on June 3, 2007. *Id*. ¶ 12; Exh. C thereto.

Lipin's claim of title to a freehold estate in the Moose Pond Property is confirmed by the recordation and indexing thereof as set forth in the "NOTICE BY DEEDED PROPERTY OWNER FOR RECORDING AND REFERENCING," Doc. #1980, Book 24738, Page 167, dated January 6, 2007, and the "NOTICE OF STATEMENT OF CLAIM TO BE RECORDED AS SAME AS DEED," Doc. #41945, Book 24131, Pages 315-44, dated July 1, 2006, incorporating therein a recorded Notice of Lis Pendens (Doc. #16675, Book 23773, Pages 218-42) dated March 16, 2006, on file in the

Registry of Deeds in Cumberland County with Deed Reference B24131P315 03/16/2006, and Map and Lot # 0008-0019-0012, in which the metes and bounds of the property are specifically set forth. Amended Complaint ¶ 13; Exhs. D1-D3 & E thereto.

Appended to the above-referenced Notice of Lis Pendens is a copy of a Second Amended Complaint filed in *Lipin v. Estate of Lipin*, Docket No. PORSC-RE-2005-00145 ("*Lipin* Constructive Trust Action"), verified by Lipin on January 10, 2006 ("*Lipin* Constructive Trust Complaint"). Exh. E to Amended Complaint at 6-30.  In the verified *Lipin* Constructive Trust Complaint Lipin states, *inter alia*:

> 9.  At the time of his death on October 6, 2005, the decedent [Dr. Lipin] was a temporary resident of Stockholm, Sweden, but a permanent resident of the United States on the basis of residential real property maintained in his name on Moose Pond in the Town of Bridgton, Cumberland County, State of Maine ("Moose Pond Property").
>
> 10.  The status of the Moose Pond Property as the permanent residence of the decedent at the time of his death is shown by the fact that the decedent sought and received in the amount of 27.54% a homestead tax exemption from the Town of Bridgton deducted from his Real Estate Tax Bill for 2005 by virtue of the State of Maine Municipal Revenue Sharing Program, Homestead Exemption Reimbursement & State Aid to Education.
>
> 11.  The permanent address maintained by decedent Theodore Lipin in the State of Maine, until the time of his death, was 301 Hio Ridge Shores South, Post Office Box 154, Bridgton, Maine 04009.
>
> ***
>
> 56.  Theodore Lipin is the owner of record at the Cumberland County Registry of Deeds of certain real property, including land and a Swedish residential "Stugor," as more particularly bounded and described in two warranty deeds recorded in the Cumberland County Registry of Dee[d]s at Book 2931, Page 435 and in Book 3090, Page 351 (herein the "Moose Pond Property").

*Lipin* Constructive Trust Complaint ¶¶ 9-11, 56.

Ellis falsely identified herself to be the "executrix" of the Estate in a letter to Swedish attorney Ulf Bergquist signed and dated November 18, 2005.  Amended Complaint ¶¶ 34, 78-79.  She obtained

her appointment from Mazziotti by concealing this false statement. *Id.* ¶ 78. The letter was concealed from Lipin because Ellis was not the "executrix" of the Estate and lacked the capacity to represent that she was or would be the "executrix" and was not authorized to approve any action as such. *Id*. ¶ 79. Each of the defendants had direct knowledge that Ellis was not the "executrix" on that date. *Id*. ¶ 35.[9] In collusion with Hunt, Silk and Sherman, Bergquist used the false document of November 18, 2005 and another false document of December 8, 2005 to induce the Danske Bank in Copenhagen, Denmark, to permit him to seize an antique coin collection located in a safe-deposit box to which Lipin had maintained continuous and uninterrupted possession and joint signatory power with her father as co-tenant. *Id*. ¶ 80. Ellis has admitted that she knows the status and location of the coin collection but has concealed that information from Lipin. *Id*. ¶ 65. Lipin was and is the owner entitled to immediate possession of the antique coin collection gifted to her by her father on or before February 3, 1990, as memorialized in a letter of that date from Dr. Lipin. *Id*. ¶ 81.

Prior to her appointment as special administrator of the Estate, Ellis retained and authorized Hunt to act as her attorney. *Id*. ¶ 49. Also prior to that appointment, Ellis separately retained Silk to act as her and her husband's attorney on an individual basis as defendants in a separate proceeding in the Superior Court in Cumberland County without so informing Mazziotti. *Id*. ¶ 50. Mazziotti has knowledge that Ellis, under instructions from Silk, failed to disclose to the Probate Court on March 1, 2006 her status as a defendant in the *Lipin* Constructive Trust Action. *Id*. ¶ 40. Shortly after Ellis was named special administrator of the Estate over Lipin's objection, Lipin brought to Mazziotti's attention information bearing on Ellis's qualification to be the executrix or personal representative of the Estate, including information concerning conflicts of interest, dishonesty and deceit. *Id*. ¶ 77.

---

[9] Presumably, Lipin did not mean to include Mazziotti in this statement. She elsewhere states that this fact was concealed from Mazziotti. *See* Amended Complaint ¶ 78.

In or about March 2006 Ellis or Hunt or an agent acting in Ellis's behalf caused the Maine Locksmith Services to drill out and cut the locks Lipin had placed upon the front door and cellar door of the residential cabin on the Moose Pond Property, and Ellis or her agents or co-conspirators broke into, entered and searched the property and seized the sign of notification that Lipin had placed in the front window of the cabin identifying her as the owner of the Moose Pond Property. *Id*. ¶ 28. Ellis and Hunt have entered into a contract with Caretake America to prevent Lipin from having any access to the property. *Id*. ¶ 29. Photographs of the property taken by Lipin on May 16, 2007 show signage identifying Lipin as owner of the property and reveal that a twenty-foot fence placed on the property by Lipin years ago remains in existence. *Id*. ¶ 30; Exhs. F1-F12 thereto. At the time of Dr. Lipin's death on October 6, 2005, Lipin was in exclusive and continuous possession of the Moose Pond Property, and she continues to be the sole title owner of record of that property. Amended Complaint ¶ 27. She remained in possession of the Moose Pond Property until the search and seizure by the defendants. *Id*. ¶ 31.

Ellis, as the purported "Personal Representative or Person in Possession of Decedent's Property," signed or authorized the "2005 FORM 706ME" on or about June 30, 2006 falsely representing to the Maine Revenue Services, the IRS, Lipin, Robert Lipin and Markatos that the Maine Taxable Estate included the Moose Pond Property. *Id*. ¶¶ 16, 22. When these statements were made, Ellis and her attorneys knew that Lipin had been the sole, continuous and exclusive occupant of the aforesaid property for more than twenty-three years and the sole title owner of record and recorded insured homeowner of the property. *Id*. ¶ 17. Form 706, which Hunt filed under instructions from Ellis, falsely stated that Ellis was the personal representative and in possession of Dr. Lipin's property as of June 30, 2006. *Id*. ¶ 23. Ellis was not the personal representative of the Estate on June 30, 2006 and she exceeded her authority as the interim special administrator of the Estate in falsely

claiming that she was in possession of Dr. Lipin's property and that the "domicile" of Dr. Lipin was in Sweden instead of in Maine. *Id*. ¶ 24. The foregoing statements were prepared and signed by Hunt on behalf of Ellis under penalty of perjury. *Id*. ¶ 25. The defendants have knowledge that Ellis and Hunt prepared and filed false tax returns with the IRS and the State of Maine Revenue Service dated July 5, 2006. *Id*. ¶ 67.

By letter dated July 7, 2006 to Ellis, Sherman, Silk and Lipin enclosing copies of the federal and Maine estate-tax returns, Hunt stated, *inter alia*: "The principal reason we had enough cash on hand to pay both the state and federal estate taxes due is that the legal fees payable in respect of this estate will, in light of all present evidence, probably be astronomical. An estimate of the total fees is located on Line 2 of Schedule J of the return. This estimate assumes that Mr. Bergquist's fees and my own will be paid from the estate and that, eventually, one or more courts will order that fees incurred by other parties in the pending litigation also be paid from estate assets. The estimated total fee represents a shot in the dark; it may, in fact, prove to be low if things continue as they have been. Without the litigation, this estate could probably have been administered for $50,000." Exh. H to *id*. at 3.[10]

Silk prepared a proposed Settlement Agreement dated July 20, 2006, signed by Robert Lipin and by Ellis in her capacity as special administrator of the Estate and in her individual capacity, that was transmitted with the agreement of Sherman via the Internet to Probate Judge James E. Mitchell, who had been appointed to be the mediator at a court-ordered mediation conference held in Silk's law offices on July 18, 2006 over Lipin's objections. *Id*. ¶¶ 58-62; Exh. G to *id*. The document was transmitted by Mitchell to Lipin via the Internet. Amended Complaint ¶ 59. The defendants threatened

---

[10] I quote the letter itself rather than setting forth allegations of the Amended Complaint that mischaracterize it as showing a scheme of Hunt, Sherman and others to steal properties from Lipin and fraudulently convey them to the Estate for purposes of laundering them into payouts of "astronomical" attorney fees. *See, e.g.*, Amended Complaint ¶ 70.

Lipin that if she did not sign the Settlement Agreement, pursuant to which she would consent to withdraw all pending litigation from the state courts, they would cause her to surrender title to the Moose Pond Property as well as to the antique coin collection that had been given to her by Dr. Lipin on February 3, 1990 as a gift held in trust in a joint safe-deposit box in Copenhagen, Denmark. *Id*. ¶¶ 57, 63. The defendants, together with Hunt and Mitchell, threatened Lipin that unless she agreed to their demands they would sell her antique coin collection, which has an estimated value of at least $1.6 million, to Robert Lipin for only $650,000 less his purported one-third share of the Estate. *Id*. ¶ 63.[11] At the conference, Mitchell admitted to Lipin that the motive of Silk, Sherman and the other attorneys involved was to convey property belonging to Lipin to the Estate and then to "trash the Estate" by rewarding themselves with "astronomical" fees to which Ellis, who was their puppet, would consent. *Id*. ¶ 68. Mitchell also told Lipin that Silk, Sherman, Hunt and Bergquist expected to receive $400,000 each in legal fees, or a total of $1.6 million. *Id*. ¶ 70. Silk, Sherman and Ellis had reason to expect Mazziotti to aid and abet them as he has done so in proceedings in Probate Court. *Id*. ¶ 75.

In her capacity as special administrator, Ellis caused Hunt to commence a forcible entry and detainer ("FED") proceeding in the Town of Bridgton municipal court against Lipin on July 18, 2006, which was filed in that court on July 31, 2006. *Id*. ¶ 51. Ellis also retained Silk to represent her and her husband in that proceeding. *Id*. ¶ 52.

On May 16, 2007, to Lipin's surprise, Silk suddenly made an appearance for Ellis in her capacity as special administrator of the Estate although he was simultaneously representing Ellis and Robert Lipin in their individual capacities as defendants in the Superior Court action in Cumberland County. *Id*. ¶ 53. Mazziotti was personally served with a copy of the summons and complaint in the

---

[11] Presumably, Lipin does not mean to indicate that Mazziotti was among the "defendants" threatening her at the settlement conference. *(continued on next page)*

instant action on May 21, 2007.  *Id*. ¶ 45.  By order dated May 24, 2007 Mazziotti promoted Ellis to be personal representative of the Estate.  *Id*.

Robert Lipin, client of Silk, received an unlawful distribution in the amount of $200,000 that was authorized and approved by Ellis.  *Id*. ¶ 36.  Markatos also has received property and/or money unlawfully distributed to her as the client of Sherman.  *Id*. ¶ 37.  Ellis, Silk, Sherman and Hunt paid Deborah Lovewell, the first wife of Robert Lipin, to withdraw from any involvement in matters of the Estate and to testify falsely with respect thereto.  *Id*. ¶ 38.

### C. Analysis

### 1. Mazziotti

Mazziotti seeks dismissal of the claims against him with prejudice on the basis, *inter alia*, that Lipin has failed to state a claim upon which relief can be granted inasmuch as he is absolutely immune for actions taken in his judicial capacity.  *See* Mazziotti Motion To Dismiss at 8-10; Mazziotti Dismiss Reply at 2.[12]  I agree. The Supreme Court has explained:

> Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages.  Accordingly, judicial immunity is not

---

She does not allege that he participated in it.

[12] Mazziotti, Sherman, Silk and Ellis also invoke the so-called *Rooker-Feldman* doctrine to seek dismissal of the instant suit on the basis of lack of subject-matter jurisdiction to the extent Lipin effectively asks this court to overturn state-court decisions granting Ellis possession of the Moose Pond Property and bearing on probate of the Estate.  *See* Mazziotti Motion To Dismiss at 5-6; Sherman Motion To Dismiss at 6.  As Lipin points out, *see* Answering Memorandum of Joan C. Lipin in Opposition to Motion To Dismiss of Defendant Joseph R. Mazziotti ("Mazziotti Dismiss Opposition") (Docket No. 16) at 9, "the *Rooker-Feldman* doctrine now applies only in the limited circumstances where the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment[,]" *Federación de Maestros de P.R v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 23-24 (1st Cir. 2005) (citation and internal quotation marks omitted).  The defendants proffer no evidence that state proceedings had ended as of May 21, 2007, the date of filing of the original complaint in this matter.  *See* Docket No. 1.  Inasmuch as appears from my own review of the dockets in *Lipin v. Estate of Lipin*, Docket No. PORSC-RE-2005-00145 (Me. Super. Ct.), *In re Estate of Lipin*, Docket No. PORSC-CV-2006-00515 (Me. Super. Ct.), *Ellis v. Lipin*, Docket No. BRIDC-SA-2006-00155 (Me. Dist. Ct.), and *In re Estate of Lipin*, Docket No. 2005-1642 (Me. Probate Ct.), proceedings in those cases had not ended for *Rooker-Feldman* purposes as of that date.  *See Federación*, 410 F.3d at 24-25 (state proceedings are considered to have ended for *Rooker-Feldman* purposes in three circumstances: (i) "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved," (ii) "if the state action has reached a point where neither party seeks further action," and (iii) "if state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have ended within the meaning of *Rooker-Feldman* on the federal questions at issue.") (internal quotation marks omitted).

overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.

Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted).

The gravamen of Lipin's complaint against Mazziotti is that he conspired with Silk, Sherman, Hunt and others to render Probate Court rulings adverse to her and/or favorable to her sibling and in-law opponents – such as his appointment of Ellis first as special administrator and later as personal representative of the Estate and his anticipated approval of attorney-fee petitions – for various improper motives, *e.g.*, in exchange for political favor or private financial gain in the form of an implicit promise of added business in his private real-estate and probate-law practice and/or in retaliation for Lipin's filing of the instant suit against him. *See, e.g.*, Amended Complaint ¶¶ 6-7, 39-45, 69-72, 76-78, 84-86. Lipin thus complains of actions taken by Mazziotti in his judicial capacity that she alleges were both wrong and motivated by improper considerations of gain or bias. The law is clear that in the face of such allegations a judge is absolutely immune from suit. *See, e.g., Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.") (citation, footnote and internal quotation marks omitted).[13] Mazziotti hence is entitled to dismissal with prejudice of all claims set forth against him in the Amended Complaint.[14]

---

[13] Lipin opposes Mazziotti's motion to dismiss, in relevant part, on grounds that the motion (i) is procedurally improper and (ii) fails to address antitrust, civil-rights and title or ownership claims pleaded in the Amended Complaint. *See* Mazziotti Dismiss Opposition at 2-3, 10-18. Neither point has merit. Lipin contends that the motion is improper because it (i) fails to address certain specific allegations of the Amended Complaint, (ii) attaches a document outside the record as an exhibit, (iii) improperly seeks to incorporate by reference grounds for dismissal in other parties' memoranda that had not yet as of then been filed, and (iv) contains "scandalous, impertinent, *(continued on next page)*

## 2.  Sherman, Ellis and Silk

Sherman, joined by Ellis and Silk, seeks dismissal of the Amended Complaint on the basis, *inter alia*, of Lipin's failure to set forth any individual claim with respect to which relief can be granted. *See generally* Sherman Motion To Dismiss; Ellis/Silk Motion To Dismiss. For the following reasons, he makes a persuasive case as to each of those claims.[15]

Claims of tortious interference; trespass; slander of title:  A plaintiff claiming tortious interference with a contract or prospective economic advantage must show "(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110 (footnotes omitted). While Lipin alleges that some or all of the defendants interfered with her ownership rights in certain property (the Moose Pond Property and the antique coin collection), she has not alleged the existence of a contract or a

---

vituperations" against her in violation of Federal Rule of Civil Procedure 12(f). *See id.* at 2-3. With respect to the first argument, a failure to address specific allegations in a complaint does not render a motion to dismiss "improper"; it may be, as in this case, that there is no need to discuss them in any detail. With respect to the second argument, Mazziotti merely appends a copy of a public document – a motion Lipin filed in the Maine Probate Court case. *See* Attachment to Mazziotti Motion To Dismiss. For reasons discussed above in the context of the Motion To Strike, there is nothing improper in this. With respect to the third argument, Lipin cites no authority for the proposition that incorporation by reference of relevant arguments to be made in memoranda yet to be filed is improper. In any event, I have not relied on any ground for dismissal that Lipin contends was improperly incorporated in that fashion. With respect to the fourth argument, there is nothing remotely scandalous or impertinent in Mazziotti's motion. As to the second point, Lipin's contentions that Mazziotti fails to address certain of her claims and overlooks the fact that he is sued in his individual capacity, as a lawyer in private practice, *see* Mazziotti Dismiss Opposition at 10-18, miss the mark. Lipin's allegations that Mazziotti participated in certain antitrust and civil conspiracies and discriminated against her for private financial gain do not obscure the salient fact that his actions of which she complains were those taken in his capacity as a judge of the Maine Probate Court. Accordingly, unless Mazziotti acted in the complete absence of all jurisdiction – and there is no hint that is the case here – he is entitled to absolute immunity regardless whether sued in his "individual capacity." *See, e.g., Marcello v. Maine*, 468 F. Supp.2d 221, 225 (D. Me.), *objections overruled*, 2007 WL 397128 (D. Me. 2007) ("Judicial immunity extends to a judge sued in his individual capacity, as well as to claims asserted against him in his official capacity.") (citations omitted).

[14] Mazziotti takes the precaution of requesting that the court dismiss both the original and the amended complaints with prejudice. *See* Mazziotti Motion To Dismiss at 1. The amended complaint superseded the original complaint and thus is the operative complaint in this matter. *See, e.g., Kolling v. American Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003) ("Kolling's amended complaint completely supersedes his original complaint, and thus the original complaint no longer performs any function in the case."). Dismissal with prejudice of the amended complaint, if granted as recommended, accordingly would terminate the instant lawsuit.

[15] As Sherman points out, "it is not entirely clear from [Lipin's] Amended Complaint what her claims are[.]" Sherman Motion To Dismiss at 3. In my view, he has fully and accurately summarized her claims as best they can be discerned, and she has not suggested, in response, that he has mischaracterized or omitted any. *See generally* Sherman/Ellis/Silk Dismiss Opposition.

prospective economic advantage with which they interfered by intimidation or fraud. Hence, she fails to state a claim of tortious interference.

"A trespasser is defined as a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Collomy v. School Admin. Dist. No. 55,* 1998 ME 79, ¶ 6, 710 A.2d 893, 895 (quoting Restatement (Second) of Torts § 329 (1965)); *see also, e.g., State v. Tullo,* 366 A.2d 843, 847 (Me. 1976) ("Every unauthorized entry on the land of another is a trespass and anyone who makes such an entry is a trespasser."). Lipin complains of trespass on the Moose Pond Property by Ellis and/or her agents in March 2006. While Lipin alleges that she was continuously and exclusively in possession of the Moose Pond Property for more than twenty years as of the time of the alleged trespass, she also states in the verified *Lipin* Constructive Trust Complaint that, at the time of Dr. Lipin's death, Dr. Lipin was the owner of record of the Moose Pond Property, that he maintained it as his permanent residence and that he sought and received a homestead exemption for it. *See* Lipin Constructive Trust Complaint ¶¶ 9-11, 56. She also states that Mazziotti appointed Ellis special administrator of the Estate in March 2006. *See* Amended Complaint ¶ 3.

As Sherman observes, *see* Sherman Motion To Dismiss at 8, the Maine Probate Code grants a special administrator "the power of a general personal representative except as limited in the appointment and duties as prescribed in the order[,]" 18-A M.R.S.A. § 3-617. Ellis was appointed special administrator, by order of Mazziotti dated March 3, 2006, "to collect and manage the assets of the estate; and to prepare all estate tax returns which may be required." Exh. 7 to Sherman Motion To Dismiss. Section 3-709 of the Maine Probate Code provides:

> Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal

> representative, possession of the property by him will be necessary for purposes of
> administration. The request by a personal representative for delivery of any property
> possessed by an heir or devisee is conclusive evidence, in any action against the heir
> or devisee for possession thereof, that the possession of the property by the personal
> representative is necessary for purposes of administration. The personal
> representative shall pay taxes on, and take all steps reasonably necessary for the
> management, protection and preservation of, the estate in his possession. He may
> maintain an action to recover possession of property or to determine the title thereto.

18-A M.R.S.A. § 3-709. Inasmuch as, whatever the ultimate disposition of the Moose Pond Property,

it was titled in Dr. Lipin's name at the time of his death, Ellis was empowered following her

appointment on March 3, 2006 as special administrator of the Estate to take possession of and manage

that property. The well-pleaded allegations of the Amended Complaint, as supplemented by

documents appended thereto and incorporated by reference therein as well as court records, make

clear that Ellis and/or agents acting in her behalf therefore had a privilege or authorization to take

possession of the Moose Pond Property. Lipin hence does not state a trespass claim upon which relief

can be granted.

For the same reasons, the Amended Complaint does not set forth a claim of slander of title

upon which relief can be granted. Slander of title entails a showing of (1) "a publication of a

slanderous statement disparaging [a] claimant's title;" (2) that was false; (3) "made with malice or

made with reckless disregard of its falsity;" and (4) that "caused actual or special damages."

*Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996). While Lipin may or may not ultimately be

found to be the rightful owner of the Moose Pond Property, as of the time of Dr. Lipin's death it was

titled to him, and Ellis as special administrator of the Estate was entitled to take possession of it and

manage it.

Claims of Civil Conspiracy Pursuant to 42 U.S.C. §§ 1985-86: The gravamen of the

conspiracy claim set forth in the Amended Complaint is that, for considerations of personal financial

gain, Mazziotti, Sherman, Silk, Ellis and others conspired to strip Lipin of certain property rights,

transfer those rights to the Estate and plunder the Estate by way of payout of astronomical legal fees to the private lawyers and unlawful Estate distributions to heirs other than Lipin.  *See* Amended Complaint ¶¶ 26, 39-42, 69-72.  As Sherman points out, *see* Sherman Motion To Dismiss at 10-11, to make out an actionable civil conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show that "the alleged conspirators possessed some racial, or perhaps otherwise class-based, invidiously discriminatory animus[,]" *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir. 1996) (citation and internal quotation marks omitted).  The same is true with respect to claims of civil conspiracy pursuant to 42 U.S.C. § 1986.  *See, e.g., Landrigan v. City of Warwick,* 628 F.2d 736, 739 n.1 (1st Cir. 1980) ("As plaintiff has not alleged any racial or other class-based, invidiously discriminatory animus, section 1985 is not applicable.  As section 1985 does not apply, any claim under section 1986 must also fail.") (citations and internal quotation marks omitted).  Inasmuch as the Amended Complaint cannot fairly be read to set forth a conspiracy against the plaintiff based on class-based animus – as opposed to greed and/or inter-family conflict – it fails to state a claim for civil conspiracy as to which relief can be granted.[16]

    Claims of Discrimination and Constitutional Violations:   As noted above, Lipin's discrimination allegations –  bald statements that the defendants were biased against her because of her status as a *pro se* Jewish woman from New York and her age, *see, e.g.*, Amended Complaint ¶¶ 46(a), 55, 76 – are insufficient to withstand a Rule 12(b)(6) motion to dismiss, *see, e.g., Twombly,*

---

[16] Lipin does allege that the defendants exhibited bias against her on the basis of her age, sex, religion, New York residency and *pro se* litigant status.  *See* Amended Complaint ¶¶ 46(a), 55, 76.  She does not allege that any such biases motivated the alleged conspiracy; however, even if she did, it would not save her conspiracy claims from dismissal.  As Sherman points out, *see* Sherman Motion To Dismiss at 12, she offers nothing but bald, conclusory allegations in support of her discrimination claims.  Allegations of that nature cannot withstand a Rule 12(b)(6) motion to dismiss.  *See, e.g., Twombly,* 127 S. Ct. at 1964-65 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions") (citation and internal punctuation omitted); *Toledo v. Sánchez,* 454 F.3d 24, 34 (1st Cir. 2006) ("Although there is no heightened pleading standard for civil rights claims, mere conclusory allegations of discrimination unsupported by any facts are insufficient for notice pleading purposes."); *Marcello v. Maine,* 457 F. Supp.2d 55, 63 (D. Me. 2006) ("although pro se complaints are to be read generously . . . allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements") (citation and internal quotation marks omitted).
*(continued on next page)*

127 S. Ct. at 1964-65; *Toledo*, 454 F.3d at 34; *Educadores Puertorriqueños en Acción v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) ("[I]n a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally.").  Sherman, Ellis and Silk are entitled on that basis to dismissal of Lipin's discrimination claim against them.

With respect to Lipin's federal constitutional claims – she alleges violations of her equal-protection and other rights under the First, Fourth, Fifth, Eighth, Ninth and Fourteenth amendments to the United States Constitution and invokes, *inter alia*, 42 U.S.C. § 1983, *see* Amended Complaint ¶ 46(c) – Sherman correctly observes that a defendant must qualify as a "state actor," *see* Sherman Motion To Dismiss at  13; *see also, e.g., American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) ("Action taken by private entities with the mere approval or acquiescence of the State is not state action."); *Camilo-Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir.1999) ("Section 1983 provides a private right of action against state actors – that is, public officials acting under color of state law – who deprive individuals of rights confirmed by federal constitutional or statutory law."); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir. 1996) ("Since § 1983 is aimed at state action and state actors, persons victimized by the tortious conduct of private parties must ordinarily explore other avenues of redress.") (citations omitted).  The Amended Complaint does not allege that Sherman and Silk, private lawyers representing private clients, are state actors.  It does allege that Ellis acted "under color of state law" in her capacity as special administrator of the Estate, *see* Amended Complaint ¶ 3; however, as a matter of law, such an appointment does not confer "state actor" status, *see, e.g., Conboy v. Norwest Bank Ind., N.A.*, Civ. No. S 94-1851, 1994 WL 621605, at

*1 (D. Md. July 13, 1994), *aff'd,* 37 F.3d 1492 (4th Cir. 1994) ("In that a mere appointment by a probate or other court of an individual to serve as personal representative of an estate or trustee of a trust does not vest state power in the appointee in such a way as to attribute that person's conduct to the state, that person is not a state actor."). Sherman, Silk and Ellis accordingly are entitled to dismissal of Lipin's federal constitutional claims for failure to state a claim as to which relief can be granted.[17]

Lipin also brings claims pursuant to several provisions of the Maine Constitution and the Maine Civil Rights Act, 5 M.R.S.A. § 4682 ("MCRA"). *See, e.g.,* Amended Complaint ¶ 46(b), (d) & (e). Her claims of Maine constitutional-law violations necessarily are made via the vehicle of the MCRA. *See, e.g., Andrews v. Department of Envtl. Prot.,* 1998 ME 198, ¶ 23, 716 A.2d 212, 220 (plaintiff had no remedies for violation of rights provided by Maine Constitution apart from those the Legislature had seen fit to provide via the MCRA). The MCRA provides, in relevant part:

> Whenever any person, whether or not acting under color of law, intentionally interferes
> or attempts to intentionally interfere by physical force or violence against a person,
> damage or destruction of property or trespass on property or by the threat of physical
> force or violence against a person, damage or destruction of property or trespass on
> property with the exercise or enjoyment by any other person of rights secured by the
> United States Constitution or the laws of the United States or of rights secured by the

---

[17] Lipin does allege that Sherman, Silk and Ellis conspired with Mazziotti – a probate-court judge and, as such, a state actor. "[C]laims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss." *Revis v. Meldrum,* Nos. 06-5197, 06-5399, 2007 WL 1146460, at *16 (6th Cir. Apr. 19, 2007). The problem for Lipin is that her claim of a conspiracy involving Mazziotti is not adequately alleged; rather, she speculates that inasmuch as (i) Mazziotti maintained a private law-practice in addition to his probate-court judgeship (ii) made rulings against her and (iii) appointed and/or maintained Ellis in special-administrator or personal-representative status despite being apprised by Lipin of Ellis's alleged unfitness for those posts, he had a tacit understanding with Silk, Sherman, Ellis and others that they would refer business to his private practice in exchange for rulings against Lipin. *See* Amended Complaint ¶¶ 39-41, 69-76; *see also, e.g., In re Sinaltrainal Litig.,* 474 F.Supp.2d 1273, 1299 (S.D. Fla. 2006) ("This Court notes that the language in the Complaint regarding the existence of a conspiracy appears rather speculative on its face. This Court agrees with the Defendants that this allegation does not meet a notice pleading standard[.]").

.

Constitution of Maine or laws of the State or violates section 4684-B, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

5 M.R.S.A. § 4682(1-A). Lipin does allege that Ellis and/or her agents trespassed on the Moose Pond Property, cut its locks and seized a sign indicating Lipin's ownership of that property. However, as discussed above, it is clear on the face of the Amended Complaint, together with documents referenced and incorporated therein and official court documents of which the court can take cognizance, that Ellis was authorized to enter upon and take possession of the Moose Pond Property and that accordingly there was no underlying trespass. In the absence of this predicate, Sherman, Silk and Ellis are entitled to dismissal pursuant to Rule 12(b)(6) of Lipin's MCRA and Maine constitutional claims.

<u>Sherman Act Antitrust Claims</u>:  In Counts III and IV Lipin alleges, *inter alia*, that the defendants combined and conspired to restrain trade in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, to injure her and dissipate the Estate's assets. *See, e.g*., Amended Complaint ¶¶ 72, 97.  As Sherman notes, *see* Sherman Motion To Dismiss at 15, "[i]t is a fundamental principle that a plaintiff asserting an antitrust claim must allege sufficient facts to establish a substantial effect on interstate commerce[,]" *Kuck v. Bensen*, 647 F. Supp. 743, 745 (D. Me.), *amended on other grounds*, 649 F. Supp. 68 (D. Me. 1986).  No such allegation is made here.  Accordingly, Sherman, Silk and Ellis are entitled to dismissal of Lipin's antitrust claims against them.[18]

### 3. Requested Filing-Injunction Remedy

A final matter remains: the request of Mazziotti, Silk and Ellis that the court enjoin Lipin from making further filings without prior approval of the court.  *See* Mazziotti Dismiss Reply at 3; Silk

---

[18] Lipin opposes the Sherman/Silk/Ellis motion to dismiss; however, her memorandum is non-responsive to the points discussed above. *See generally* Sherman/Ellis/Silk Dismiss Opposition.

Dismiss Reply at 3; Ellis Dismiss Reply.  Lipin has a history of use of abusive litigation tactics resulting in the striking of certain of her filings and the imposition of sanctions and/or injunctions against further filings.  *See, e.g*., Order of Court, *Ellis v. Lipin*, No. 06-2605 (1st Cir. May 4, 2007), Exh. 4 to Sherman Motion To Dismiss (granting sanction against Lipin of payment of $500 to Ellis and Robert Lipin on basis that Lipin "should have been aware that this appeal had no chance of success"); Order on Dr. Robert G. Lipin and Dr. Evelyn F. Ellis' Motion To Strike and for Sanctions, *Ellis v. Lipin*, Docket No. BRIDC-SA-2006-00155 (Me. Dist. Ct. May 24, 2007), Exh. 2 to Sherman Motion To Dismiss (granting motion to strike certain statements submitted by Lipin on basis that they "have absolutely no bearing on any issue before the court and are clearly scurrilous under Rule 12"; imposing sanction of $250 to be paid by Lipin to clerk of court and ordering Lipin to pay Ellis's and Robert Lipin's reasonable attorney fees incurred in pursuing their motion to strike); Order Granting Respondent and Cross Petitioner Ann Susan Markatos's Motion To Enjoin Joan C. Lipin From Filing Further Pleadings and Lawsuits Without Prior Approval of the Probate Court, *In re Estate of Lipin*, Docket No. 2005-1642 (Me. Probate Ct. May 23, 2007), Exh. 5 to Sherman Motion To Dismiss; Order, *In re Estate of Lipin*, Docket No. 2005-1642 (Me. Probate Ct. June 30, 2006), Exh. 1 to Sherman Motion To Dismiss (granting Robert Lipin's motion to strike various paragraphs in materials filed by Lipin "as immaterial, impertinent and scandalous under Maine Rules of Civil Procedure 11 and 12" and ordering Lipin to pay Robert Lipin's reasonable attorney fees incurred in filing the motion to strike); *Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa*., 202 F. Supp.2d 126, 142 (S.D.N.Y. 2002) ("Because it is clear that neither [Lipin nor her attorney] can be depended upon to desist from repeated attempts to relitigate previously-rejected claims and each rejection has led to elaboration[] of an ever-broadening conspiracy theory, the extraordinary remedy of injunctive relief barring the commencement of further related litigation is appropriate.").

A similar pattern of litigation practice is emerging in this court. Lipin previously filed a frivolous removal action related to Estate matters here. Her complaint and other filings in the instant litigation tend to be prolix, vituperative and obtuse, and her Motion To Strike is, in my view, groundless and vexatious. While Lipin is a *pro se* litigant, a circumstance that normally would counsel particular caution in imposing filing restrictions, *see, e.g., Cok v. Family Court of R.I.*, 985 F.2d 32, 35 (1st Cir. 1993), she happens to be a law-school graduate – she states that she received a J.D. degree from New York Law School in February 2005, *see* Mazziotti Dismiss Opposition at 3 n.1 – and she has engaged in extensive litigation on her own behalf.

In these circumstances some relief is warranted, although the requested injunction against further filings in this court without prior approval is, at least at this juncture, overly broad. *See, e.g., Cok*, 985 F.2d at 36 ("Injunctions restricting court access across the board in all cases are very much the exception to the general rule of free access to the courts. They should be issued only when abuse is so continuous and widespread as to suggest no reasonable alternative.") (citation and internal quotation marks omitted). At the least, a "cautionary order to the effect that filing restrictions may be in the offing" is appropriate. *Id.* at 35; *see also, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 456 F. Supp.2d 131, 164-65 (D. Me.) (warning plaintiff that "filing restrictions may be in the offing in this District" and that "[g]roundless and inappropriate filings will not be tolerated") (citation and internal quotation marks omitted), *supplemented on other grounds*, 2006 WL 2943308 (D. Me. 2006). Alternatively, the court may choose at this juncture to impose a circumscribed filing preapproval requirement – limited, for example, to the filing of any material related to or arising out of Estate litigation, such as the injunction imposed by the Maine Probate Court on May 23, 2007. *See* Order Granting Respondent and Cross Petitioner Ann Susan Markatos's Motion To Enjoin Joan C. Lipin From Filing Further Pleadings and Lawsuits Without Prior Approval of the Probate Court, *In re*

*Estate of Lipin*, Docket No. 2005-1642 (Me. Probate Ct. May 23, 2007), Exh. 5 to Sherman Motion To Dismiss.

### IV.  Conclusion

For the foregoing reasons, I **DENY** the Motion To Strike and recommend that the court **GRANT** the motions of all four defendants to dismiss the Amended Complaint in its entirety with prejudice, **DENY** the request of Mazziotti, Silk and Ellis for an injunction against further filings in this court by Lipin without preapproval but, in lieu thereof, at the least, issue a cautionary order warning Lipin that groundless, vexatious filings will not be tolerated and that filing restrictions may be imposed, and **HONOR** the request of Mazziotti that no costs be awarded him.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of July, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge